UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,
     Plaintiff,
     v.

LANCE THOMPSON,
KREUGER, RICE, HOWARD,
DAHMS, MEYERS, YOUNG,
OHRMAN, and KERANEN,
     Defendants.

_____/

Case No. 23-11684

Matthew F. Leitman
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS (ECF No. 26)**

## I.    PROCEDURAL HISTORY

Plaintiff Bruce Parker filed this *pro se* case on July 14, 2023.  (ECF No. 1).

Defendants filed a motion to dismiss and for summary judgment on October 16,

2023.  (ECF No. 26).  The motion is fully briefed.  (ECF Nos. 28, 30).  This matter

was referred to the undersigned for all pretrial matters.  (ECF No. 9).

## II.    BACKGROUND

Plaintiff is a nonbinary/gender nonconforming prisoner[1] who was diagnosed

with gender dysphoria on September 27, 2022.  (ECF No. 1, PageID.5).  Michigan

---

[1] They/them/theirs pronouns will be used for Plaintiff.

Department of Corrections ("MDOC") recognizes gender dysphoria as "a serious medical need which may not be ignored" in Policy Directive 04.06.184(J).  (*Id.*).

On April 8, 2023, Lieutenant Brandon Lee and Corrections Officer Lance Thompson requested a shakedown because Plaintiff was found with a sandwich outside the chow hall.[2]  (*Id.*).  Plaintiff complied with the shakedown.  (*Id.*).  Lee told Plaintiff "I know you, your [sic] the prisoner who alleges of[ficers] raped you or abused you at Muskegon," and told Plaintiff that he can have officers target Plaintiff and throw out Plaintiff's complaints.  (*Id.*).  Plaintiff told the officers they did not want to discuss the issue, to which Thompson replied, "[w]e can say and do what we wont [sic] to do so deal with it faggot," and "promised to shake plaintiff down whenever he see's [sic] plaintiff to make sure [Plaintiff is] traumatized."  (*Id.* at PageID.6).  Lee told Plaintiff "I don't give a fuck turn around and get shakendown and I don't care how it traumatizes you.  Hopefully this will scare you enough to stop filing complaints against officers."  (*Id.*).  Lee called Plaintiff a "fucking faggot" and used racial slurs.  (*Id.*).

Plaintiff was on modified grievance access for "filing multiple grievances that have been rejected for non-grievable issues," which meant they had to request

---

[2]  Since Plaintiff filed a verified complaint, their allegations will be taken as evidence for summary judgment purposes. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (Allegations in a verified complaint have, for summary judgment purposes, the same force as those in an affidavit).

a grievance before filing.  (*Id.* at PageID.6-8).  They requested a grievance against

Lee and Thompson, but the request was denied.  (*Id.* at PageID.6).

On April 9, 2023, Kreuger, a corrections officer, authored a Class II

Misconduct report stating he "directly observed plaintiff take four grilled cheese

sandwiches from the serving line" and "consumed the stolen sandwiches."  (*Id.*).

On April 17, 2023, Defendant Rice, an MDOC Lieutenant, conducted a hearing on

this misconduct report.  (*Id.* at PageID.7).  Plaintiff told Rice the misconduct was

"in retaliation of his complaints against defendant Lee and Thompson."  (*Id.*).

Irrespective of this, Rice found Plaintiff guilty and withdrew their privileges for

eight days.  (*Id.*).  Plaintiff appealed the decision on the same day, but the decision

was upheld.  (*Id.*).

On May 4, 2023, Plaintiff went the Mental Health Department.  (*Id.* at

PageID.8).  While Plaintiff was trying to access the building, Defendant Young, a

Corrections Officer, asked Plaintiff why Plaintiff was "trying to speak to the

Psychiatrist because all [they were] going to do is keep telling lies about some

of[ficer] abusing [them]."  (*Id.* at PageID.7).  Plaintiff said they were "very

uncomfortable," to which Young replied, "[o]h well, get the fuck on," and Plaintiff

left.  (*Id.* at PageID.8).

Plaintiff tried to explain this to Defendant Meyers, a Lieutenant, and to

Defendant Howard, an Assistant Deputy Warden.  (*Id.*).  Meyers said he would

"have Young write . . . a misconduct," and Howard agreed.  (*Id.*).  Defendant Dahms, a Captain, asked Plaintiff "Do you wont [sic] to go to segregation for complaining?"  (*Id.*).

On May 10, 2023, Plaintiff requested a grievance form from Defendant Keranen, a corrections officer.  (*Id.* at PageID.9).  Keranen asked why Plaintiff was filing so many complaints and "why . . . you guys or should I say girls who's [sic] gender dysphoric so fucked up?"  (*Id.* at PageID.10).  Keranen told Plaintiff "if [they] didn't drop [their] PREA complaints against defendant Lee and Thompson, he would 'have [Plaintiff] moved to another unit and then set up with a knife and a new case.'"  (*Id.*).  Plaintiff refused to drop the complaints, and Keranen filed a Class II Insolence Misconduct.  (*Id.*).  A hearing was held on May 17, 2023 on this misconduct and the hearing officer said the alleged misconduct does not "meet the criteria."  (*Id.*).

On May 11, 2023, Defendant Ohrman, a Lieutenant, held a hearing on Young's misconduct.  (*Id.* at PageID.9).  Ohrman found Plaintiff guilty and revoked Plaintiff's privileges for 10 days and gave five days of sanctions.  (*Id.*).  Plaintiff appealed this decision, but it was upheld.  (*Id.*).

On May 14, 2023, Plaintiff's cell mate, Jodi Hill, was chased with a knife in the recreational day room and was stabbed in the neck.  (*Id.* at PageID.10).

Keranen was observing this incident but did nothing.  (*Id.*).  Plaintiff filed a grievance about Keranen, but it was rejected as "non-grievable."  (*Id.*).

Plaintiff brought claims of retaliation, deliberate indifference, and equal protection.  (*Id.* at PageID.11).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   <u>Failure to State a Claim</u>

#### i.   Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

     ii.    Retaliation

First, Lee and Thompson claim Plaintiff did not state retaliation claims against them.  (ECF No. 26).  These defendants claim allegations of verbal abuse are not adverse without physical harm.  (*Id.* at PageID.111).  Plaintiff claims Lee

and Thompson retaliated against them "in an attempt to chill [their] protected

speech contrary to the Free Speech and petitioning clause of the First

Amendment."  (ECF No. 1, PageID.11).

"A retaliation claim essentially entails three elements: (1) the plaintiff

engaged in protected conduct; (2) an adverse action was taken against the plaintiff

that would deter a person of ordinary firmness from continuing to engage in that

conduct; and (3) there is a causal connection between elements one and two—that

is, the adverse action was motivated at least in part by the plaintiff's protected

conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (internal

citations omitted).  The parties do not argue about whether Plaintiff's conduct was

protected or whether there was a causal connection.

An adverse action would "deter a person of ordinary firmness from engaging

in protected conduct."  *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).

Inmates have "no right to be free from verbal abuse[ ] and minor threats," *Carney

v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002), and "the single search of a prison

cubicle would not deter a person of 'ordinary firmness' from pursuing

constitutional grievances."  *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir.

2003).  But a search accompanied "by excessive use of force, verbal threats, a

pattern of previous questionable shakedowns or other such factors" may meet the

adverse action standard.  *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503-504 (6th

Cir. 2011).  "[T]he use of racial slurs by an individual in a position of authority is repugnant and often carries with it an implicit threat of violence," and telling a prisoner that they "will always stay on my list" could "reasonably be interpreted by a person of ordinary firmness as a serious threat." *Id.* at 504.  Also, "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (internal citations omitted).

Plaintiff alleges Defendant Lee and Thompson "stopped [them] and requested a shakedown." (ECF No. 1, PageID.5).  Though Defendants claim this was not an adverse action because their actions did not result "in physical harm" and were not a "part of a pattern or repeated conduct," this is not the correct standard. (ECF No. 26, PageID.112).  The standard looks at whether the conduct may deter a person of ordinary firmness from engaging in protected conduct. "[T]hreats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010).

Lee and Thompson threatened Plaintiff and their ability to file grievances. This could deter a person of ordinary firmness from engaging in protected conduct.

In the reply, Defendants argue "the alleged verbal abuse . . . certainly did not prevent Parker from engaging in additional protected conduct, as [they] continued

to file Step I grievances."  (ECF No. 30, PageID.243).  But "actual deterrence need not be shown."  *Hill*, 630 F.3d at 472 (internal citations omitted).  An action can be adverse without actual deterrence.  This argument holds no merit.  Plaintiff has stated a claim of retaliation.

       ii.    Equal Protection

Defendants Lee, Thompson, and Keranen assert Plaintiff did not state equal protection claims against them.  (ECF No. 26).  In particular, they argue Parker's equal protection claim fails because Parker did not "identify other similarly situated individuals, describe how they are similarly situated, and explain how these individuals were treated differently on the basis of their gender identity or sexual orientation."  (*Id.* at PageID.110).  Finally, these Defendants claim that the "use of discriminatory slurs – inappropriate and deplorable – do not violate the Eighth Amendment . . . or, without more, violate the Equal Protection Clause."  (*Id.* at PageID.111).

First, Defendants' Eighth Amendment argument misses the mark and is unnecessary.  Plaintiff does not allege that the use of slurs violated the Eighth Amendment.  (*Id.*).  The only claim Plaintiff brings under the cruel and unusual punishment clause says Defendants "failed to protect plaintiff from harm or take any reasonable measures to abate said threat."  (*Id.*).

The equal protection clause prohibits state actors from denying "to any person within [their] jurisdiction the equal protection of the laws." U.S. Constitution. Amend. XIV, § 1. The "threshold element" is "disparate treatment." *Scarbrough v. Morgan Cnty. Bd. Of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). This clause requires that "similarly situated individuals" be treated similarly. *Nicholson v. City of Westlake*, 76 F. App'x 626, 629 (6th Cir. 2003) (citation omitted). If disparate treatment is shown, then the analysis to be applied depends on the Plaintiff's classification.

Plaintiff has not alleged in their complaint that they were treated disparately, nor do they isolate similarly situated individuals. As a result, the undersigned suggests Plaintiff has failed to state an Equal Protection claim.

In their response, Plaintiff argues that they are a member of a suspect class as a gender nonconforming/nonbinary individual. This may be so.[3] But because they failed to meet the disparate treatment element, this claim should be dismissed.

B.    Motion for Summary Judgment

    i.    Governing Standards

---

[3] Albeit limited, some courts have established that gender nonconforming behavior and appearance are protected categories. *Avery v. Nelson*, 2023 WL 2399830 (W.D. Mich. Mar. 8, 2023) (finding inmate set forth an equal protection claim when the inmate was terminated from prison employment because of gender nonconforming behavior); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576-77 (6th Cir. 2004) (employee stated an equal protection claim when discriminated against because of gender nonconforming behavior and appearance); *see also Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The

nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce their obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema*, *N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F.

App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The

prison's grievance process determines when a prisoner has properly exhausted their claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result,

defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 26, PageID.104, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, they may file a Step II grievance using the appropriate form. (*Id.* at PageID.104, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.105, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

Defendants Kreuger, Young, and Keranen claim Plaintiff did not exhaust administrative remedies with respect to the claims against them. (ECF No. 26).

ii.     Retaliatory Misconduct Tickets

There are three retaliatory misconduct tickets at issue.  First, Kreuger filed a misconduct report on April 9, 2023, stating he "directly observed [Plaintiff] . . . take four grilled cheese sandwiches."  (ECF No. 1, PageID.18).  In the Class II and III Misconduct hearing report, Plaintiff stated "I never took any extra grilled cheese sandwiches from the serving line . . . watch the camera[s], you will see." (*Id.* at PageID.19).  In the appeal, Plaintiff argued the hearing officer, Lieutenant Rice, made a decision "motivated by a retaliatory animus."  (*Id.* at PageID.20). Plaintiff was found guilty.  Plaintiff did not claim during the initial misconduct hearing that Kreuger issued a retaliatory ticket.  They only raised retaliation in the appeal when they claimed Rice, the hearing officer, retaliated in his hearing decision.  Because Rice is not moving for summary judgment, whether Rice retaliated is inconsequential.  Plaintiff did not argue Kreuger retaliated in the initial hearing.

Next, Officer Young issued a retaliatory misconduct ticket, stating Plaintiff told him "fuck you, what the fuck ever!"  (*Id.* at PageID.25).  In the misconduct hearing report, Plaintiff was found guilty.  (*Id.* at PageID.26).  Plaintiff appealed "based on his due process being violated and the misconduct itself being retaliatory," and stated "Young retaliated when he filed this ticket."  (*Id.* at PageID.27).  Plaintiff only raised retaliation in the appeal, not in the hearing.

Then, on May 10, 2023, Officer Keranen issued a misconduct ticket, stating that Plaintiff's "actions/words were intended to harass and degrade or cause alarm." (*Id.* at PageID.29). The hearing report says "Prisoner Parker stated that Officer Keranen is taking what [they] said out of context." (*Id.* at PageID.32). Plaintiff was found not guilty, and the misconduct was dismissed. (*Id.*). Plaintiff did not raise retaliation in the hearing.

When an inmate claims that they received a retaliatory misconduct ticket, they must exhaust the claim by raising the issue through the hearings and appeals process. This is so because "'[d]ecisions made in hearings conducted by hearing officers of the Hearings and Appeals Division of the Office of Policy and Hearings (OPH)' are non-grievable and 'shall be rejected by the Grievance Coordinator.'" *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) (quoting PD 03.02.130, ¶ F.1 (effective date Dec. 19, 2003)). If an inmate claims that they received a retaliatory misconduct ticket, they must raise the issue during the initial misconduct hearing. *Siggers*, 652 F.3d at 694. There is no evidence in the record to suggest Plaintiff raised retaliation in any initial hearing.

Plaintiff points to the misconduct appeal from May 3, 2023 about Kreuger's ticket. In the appeal, Plaintiff stated the initial hearing officer's decision was "motivated by a retaliatory animus." (ECF No. 28, PageID.230). They claim this argument shows they exhausted the retaliation claim. This argument fails for two

reasons: one, because Plaintiff never argued Kreuger, the ticket issuer, retaliated. Their retaliation claim was about the hearing officer. Two, Plaintiff's retaliation argument against the hearing officer is raised in the appeal, not the initial hearing. *Bell v. Mich. Admin. Bd. of Claims*, 2022 WL 17995670, at *8 (E.D. Mich. Sept. 13, 2022) ("a threshold requirement for exhaustion" is for Plaintiff to allege "retaliation *at the misconduct hearing.*") (emphasis original). Plaintiff must establish that they alleged retaliation at the original misconduct hearing and then appeal the "guilty" finding by appealing "the outcome of the misconduct hearing." *Davis-Stone v. Edwards*, 2022 WL 17097772, at *3 (E.D. Mich. Oct. 26, 2022). Because Plaintiff did not establish that they alleged retaliation at the original misconduct hearing, the appeal cannot prove exhaustion. A prisoner must establish that receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing or the prisoner is precluded from using conspiracy or retaliation as a basis to request a rehearing. *Siggers*, 652 F.3d at 694-694.

In their unsworn response brief, Plaintiff argues Rice, the hearing officer "disregarded my statement" and did not place their statements about retaliation in the hearing reports. (ECF No. 28, PageID.231). Because this statement is not sworn under penalty of perjury, it cannot serve as evidentiary support. *Davis-Stone*, 2022 WL 17097772, at *2 (Plaintiff's statement "that the hearing officer omitted his retaliation from the report" in an unsworn response was not evidentiary

support).  Though Plaintiff claims the Court cannot make "a credibility determination" about his statements, in a motion for summary judgment, the Court must look to evidence in the record.  There is no evidence in the record to support their claim that the officer misrepresented their statement or that they raised retaliation in the initial hearing.

No genuine issue of material fact remains.  Plaintiff's misconduct tickets have not been exhausted.  (ECF No. 28, PageID.231).

### iii.    Grievances

Plaintiff filed grievance ARF-2023-05-0508-27Z on May 23, 2023 related to Keranen's May 14, 2023 conduct.  (ECF No. 1, PageID.27, 31).  Plaintiff claims this grievance was non-grievable and they did not need to exhaust it.  (ECF No. 1, PageID.10).  This grievance does not appear on Plaintiff's MDOC Prisoner Step III grievance report.  (ECF No. 1, PageID.30).  It describes the May 14, 2023 incident between Plaintiff and Keranen, and brings a failure to protect complaint.  (ECF No. 1, PageID.30).  The grievance is labelled ARF230550827Z, but the numbers have been crossed out, and the 27Z is replaced with 28K.  (ECF No. 1, PageID.30). This grievance states "Issue: OTHER Non-grievable," and also, "you should receive a response no later than the due date listed above."  (*Id.* at PageID.31). Prisoners need not exhaust administrative remedies on non-grievable issues. Drawing all inferences in favor of the Plaintiff, a genuine issue of material fact

exists as to whether the May 14 incident was grievable.  The motion for summary judgment as to exhaustion of this grievance should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment (ECF No. 56) be **GRANTED IN PART**.

Defendant's motion for summary judgment on Plaintiff's retaliatory misconduct claims against Keranen, Young, and Kreuger should be granted. Defendant's motion to dismiss on Plaintiff's equal protection claims against Lee, Thompson, and Keranen should also be granted.

Plaintiff's retaliation claims against Lee and Thompson, and their claim related to Keranen's grievance should survive.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 15, 2024.                    s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on May 15, 2024.

s/Sara Krause
Case Manager
(810) 341-7850